UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-62345-CIV-MORENO

FLORIDA GUN SHOWS, INC., a Florida
corporation formerly known as
SHOOT STRAIGHT GUN SHOWS, INC.,

    Plaintiff/Counter-Defendant,

v.

CITY OF FORT LAUDERDALE, a Florida
municipality,

    Defendant/Counter-Plaintiff.
_____/

## CITY OF FORT LAUDERDALE'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

Defendant/Counter-Plaintiff, City of Fort Lauderdale ("City"), by and through its undersigned counsel, files this Answer and Affirmative Defenses to Plaintiff/Counter-Defendant Florida Gun Shows, Inc.'s ("FL Gun Shows") Verified Complaint [ECF No. 1], and files this Counterclaim against FL Gun Shows, and states as follows:

### PARTIES

1. The City is without knowledge as to the allegations in Paragraph 1 of the Verified Complaint and therefore denies same.

2. Admitted.

### JURISDICTION AND VENUE

3. The City admits that jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343. The City denies that the Verified Complaint states a cause of action or that FL Gun Shows is entitled

to any relief. The City denies the remainder of the allegations in Paragraph 3 of the Verified Complaint.

4. The City admits that supplemental jurisdiction is founded on 28 U.S.C. § 1367 over any claims that are so related to the claims over which this Court has original jurisdiction that said claims form part of the same controversy. The City denies that the Verified Complaint states a cause of action or that FL Gun Shows is entitled to any relief. The City denies the remainder of the allegations in Paragraph 4 of the Verified Complaint.

5. Denied.

6. The City admits that the Court may award attorney's fees pursuant to 42 U.S.C. § 1988 under certain circumstances. The City denies that the Verified Complaint states a cause of action or that FL Gun Shows is entitled to any attorney's fees.

7. Admitted.

## FACTUAL BACKGROUND

8. The City is without knowledge as to the allegations in Paragraph 8 of the Verified Complaint and therefore denies same.

9. The City admits that the War Memorial Auditorium ("WMA") is located in Holiday Park within the City of Fort Lauderdale. Consistent with the purpose and zoning of Holiday Park, the WMA is used as a venue for family-oriented entertainment shows, recreation, and sporting events.

10. Denied.

11. The City admits that it utilizes a system that allows potential WMA exhibitors, as a courtesy, to hold or reserve future dates on a non-binding basis until a license agreement is signed

for that calendar year.  The City is without knowledge as to the remainder of the allegations in Paragraph 11 of the Verified Complaint and therefore denies same.

12. The City is without knowledge as to the allegations in Paragraph 12 of the Verified Complaint and therefore denies same.

13. The City is without knowledge as to the allegations in Paragraph 13 of the Verified Complaint and therefore denies same.

14. The City is without knowledge as to the allegations in Paragraph 14 of the Verified Complaint and therefore denies same.

15. The City admits that it entered into license agreements with FL Gun Shows for several gun and knife shows at the WMA during the 2015 calendar year, but denies that the City had any binding obligation regarding future hold dates.  The City is without knowledge as to the remaining allegations in Paragraph 15 of the Verified Complaint and therefore denies same.

16. The City admits that it entered into a license agreement with FL Gun Shows for use of the WMA during the 2016, 2017, and 2018 calendar years, but denies that the City had any binding obligation regarding future hold dates.  The City is without knowledge as to the remaining allegations in Paragraph 16 of the Verified Complaint and therefore denies same.

17. The City admits that it entered into a license agreement with FL Gun Shows for use of the WMA during the 2018 calendar year, but denies that the City had any binding obligation regarding future hold dates.  The City is without knowledge as to the remaining allegations in Paragraph 17 of the Verified Complaint and therefore denies same.

18. The City admits that FL Gun Shows selected and reserved, on a non-binding basis, future dates for gun and knife shows at the WMA through 2025.  The City denies that the 2017 license agreement (or any of the prior license agreements) referenced any hold dates for future

years and denies that the City had any binding obligation regarding future hold dates. The City denies the remainder of the allegations in Paragraph 18 of the Verified Complaint.

19. The City admits that its license agreements with FL Gun Shows each covered a single calendar year. The City denies the remainder of the allegations in Paragraph 19 of the Verified Complaint.

20. The City is without knowledge as to the allegations in Paragraph 20 of the Verified Complaint and therefore denies same.

21. The City is without knowledge as to the allegations in Paragraph 21 of the Verified Complaint and therefore denies same.

22. The quoted statements of Mayor Trantalis and Commissioner McKinzie at the March 20, 2018 meeting of the Fort Lauderdale City Commission speak for themselves. The City denies the remainder of the allegations in Paragraph 22 of the Verified Complaint.

23. Admitted.

24. The statements of Mayor Trantalis and the City Commissioners at the April 3, 2018 City Commission meeting, as well as the August 31, 2018 letter, speak for themselves.

25. Denied.

26. Denied.

### COUNT I
### FREE SPEECH CLAUSE OF THE FIRST AMENDMENT

27. The City realleges and asserts its responses to Paragraphs 1 through 26 of the Verified Complaint.

28. Denied.

29. Denied.

30. Denied.

31. Denied.

## COUNT II
## EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT

32. The City realleges and asserts its responses to Paragraphs 1 through 26 of the Verified Complaint.

33. The City admits that the Fourteenth Amendment to the United States Constitution speaks for itself.

34. Denied.

35. Denied.

36. Denied.

37. Denied.

## COUNT III
## SECTION 790.33, FLORIDA STATUTES[*]

38. The City realleges and asserts its responses to Paragraphs 1 through 26 of the Verified Complaint.

39. Denied.

40. Denied.

## DENIAL OF ALL ALLEGATIONS NOT SPECIFICALLY ADMITTED

Any allegation not specifically admitted by the City is denied.

---

[*] In response to footnote 1 of the Verified Complaint [ECF No. 1 at 10 n.1], to the extent that the Plaintiff amends the Complaint to add any individuals who may be subject to penalties, the City reserves the right to file a counterclaim arguing that the penalties contained in section 790.33(3), Florida Statutes, are unconstitutional.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

FL Gun Shows lacks standing to assert one or more of its claims against the City.

### Second Affirmative Defense

Section 790.33(1), Florida Statutes, does not preempt the City from declining to enter into a license agreement with FL Gun Shows to host gun and knife shows at the WMA because, *inter alia*, (a) the decision not to enter into a license agreement for gun and knife shows is not a "regulation of firearms or ammunition"; (b) FL Gun Shows does not engage in the "purchase, sale, transfer, taxation, manufacture, ownership, possession, storage, and transportation" of firearms or ammunition; (c) the decision not to enter into a license agreement for gun and knife shows is not a "municipal ordinance," "administrative regulation" or "rule adopted by local" government; (d) the decision not to enter into a license agreement for gun and knife shows at a publicly owned facility is an act taken in the City's propriety capacity; (e) section 790.33(1) does not include the prohibition or regulation of "gun shows" within the list of preempted actions; and (f) many (if not most) of the activities that take place at FL Gun Shows' gun and knife shows (such as knife sales, gun and knife accessory sales, T-Shirt sales, beef jerky sales, etc.) are not related to "firearms and ammunition."

### Third Affirmative Defense

Even if section 790.33(1), Florida Statutes, applies to the City's decision not to license FL Gun Shows' gun and knife shows at the WMA, the City's decision falls under the statute's zoning exception contained in section 790.33(4)(a).

### Fourth Affirmative Defense

To the extent section 790.33, Florida Statutes, preempts the City's decision not to license FL Gun Shows' gun and knife shows at the WMA, the statute violates the United States Constitution and the Florida Constitution and is invalid.

### Fifth Affirmative Defense

The decision not to license FL Gun Shows' gun and knife shows at WMA directly advances a substantial government interest that could not be served as well by a more limited restriction.

### Sixth Affirmative Defense

FL Gun Shows' recovery and claim for damages, if any, is limited to $100,000, as provided by section 790.33(f)(2), Florida Statutes.

### Seventh Affirmative Defense

This action is barred, in whole or in part, by the doctrine of sovereign immunity.

### DEMAND FOR JURY TRIAL

The City demands a trial by jury for all issues so triable.

### RESERVATION OF RIGHTS

The City reserves the right to plead other defenses, affirmative or otherwise, that may become known during its continuing investigation and/or during discovery in this action.

### DEMAND FOR JUDGMENT

WHEREFORE, the City demands judgment in its favor as to all counts of FL Gun Shows' Verified Complaint, plus costs, including attorney's fees pursuant to 42 U.S.C. § 1988, and for such additional relief as the Court deems just and appropriate.

## COUNTERCLAIM

The City of Fort Lauderdale ("City"), by and through its undersigned counsel, and pursuant to Federal Rule of Civil Procedure 13, files this Counterclaim against Florida Gun Shows, Inc. ("FL Gun Shows"), a Florida corporation formerly known as Shoot Straight Gun Shows, Inc., and states as follows:

## OVERVIEW

1. This is an action for declaratory relief concerning the applicability and constitutionality of section 790.33, Florida Statutes.

## PARTIES

2. The City is a municipality existing under the laws of the State of Florida and is located in Broward County, Florida.

3. Pursuant to article VIII, section 2(b) of the Florida Constitution, "Municipalities shall have governmental, corporate and proprietary powers to enable them to conduct municipal government, perform municipal functions and render municipal services, and may exercise any power for municipal purposes except as otherwise provided by law." *See also* § 166.021, Fla. Stat. (2018).

4. FL Gun Shows is a Florida corporation that is both domiciled and principally located in Florida.

5. FL Gun Shows promotes "gun and knife" shows at eight locations throughout Florida. None of FL Gun Shows' gun and knife shows take place within parks, except for the gun and knife show in Fort Lauderdale that is the subject of this action.

6. During the gun and knife shows, individuals can buy, sell, or trade dangerous weapons, including military-style firearms and knives, as well as weapons accessories and other firearm- and knife-related products, such as such as ammunition, scopes, clips, reloading supplies, holsters, carry cases, range bags, hunting gear, concealment products, Tasers, stun guns, pepper sprays, knife makers, and knife sharpeners.

7. FL Gun Shows does not buy, sell, possess, or display any firearms, ammunition, or accessories during its shows; it merely promotes and hosts shows.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the City's counterclaim pursuant to 28 U.S.C. §§ 1331 and 1367.

9. This Court has authority to enter declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and chapter 86, Florida Statutes.

10. Venue is proper in the Southern District of Florida because the acts complained of occurred in the Southern District of Florida.

## FACTUAL BACKGROUND

11. The City owns and operates the War Memorial Auditorium ("WMA"), which is located in Holiday Park within the City of Fort Lauderdale.

12. The City currently licenses the WMA for entertainment shows, recreation, and sporting events that can be enjoyed by all members of the community, consistent with the purpose and zoning of Holiday Park, which is to be a venue for family-oriented entertainment shows, recreation, and sporting events.

13. The decision to license or not license the WMA is handled on a case-by-case basis by City staff and does not require City Commission approval.

14. The property on which WMA and Holiday Park is located is zoned as a "Park, Recreation and Open Space (P) District." Pursuant to sections 47–1.14 and 47–8.14 of the City Code, gun shows are a prohibited use in the "P" zoning district. However, firearms stores are a permitted use in other City zoning districts.

15. Notwithstanding the zoning classification, in the past, the City entered into several license agreements with FL Gun Shows, which permitted it to host gun and knife shows at the WMA.

16. Pursuant to the most recent license agreement, FL Gun Shows was permitted to host gun and knife shows at the WMA for the 2018 calendar year, with the last 2018 show taking place on November 17 and 18, 2018. In paragraph 6 of the license agreement, FL Gun Shows agreed to abide by certain restrictions, including, but not limited to, ensuring that all gun vendors are duly licensed firearms dealers, ensuring that vendors perform background checks in connection with all gun sales pursuant to applicable Florida and federal law, and arranging and paying for a police detail for security.

17. In early to mid-2018, FL Gun Shows advised the City of its desire to enter into a license agreement for gun and knife shows in 2019.

18. On March 28, 2018, in correspondence directed to the City, counsel for FL Gun Shows stated that "the existing WMA lease already contains terms and conditions that violate § 790.33, including supplemental requirements for gun vendors at the show that exceed Federal and State law requirements. In order to be an accommodating tenant, FGS has complied with those illegal requirements to date, but is under no legal obligation to do so."

19. In a letter dated August 31, 2018, the City Manager, Lee Feldman, advised FL Gun Shows that the City would not be providing FL Gun Shows with a proposed license agreement to host gun and knife shows at the WMA in 2019.

20. On October 2, 2018, FL Gun Shows filed a lawsuit against the City (the "Lawsuit") in the United States District Court for the Southern District of Florida.

21. In the Lawsuit, FL Gun Shows alleges that, through Mr. Feldman's decision, the City has adopted and enforced "an anti-gun show **policy** at its publicly-owned facility." ECF No. 1 ¶ 39 (emphasis added). FL Gun Shows further asserts that "the City is **regulating** the purchase, sale, transfer and ownership of firearms and ammunition in violation of Florida Statute § 790.33." *Id.* (emphasis added).

22. In the Lawsuit, FL Gun Shows also contends that, through Mr. Feldman's decision, the City has violated its federal constitutional rights to engage in commercial speech and to equal protection.

23. As a result of the Lawsuit, the City is uncertain as to its rights and other legal relations with FL Gun Shows.

**Section 790.33, Florida Statutes**

24. Section 790.33, Florida Statutes, purports to preempt the regulation of firearms and ammunition by local governments.

25. The preemption of the regulation of firearms and ammunition is set forth in section 790.33(1) [hereinafter the "Preemption Provision"]:

> PREEMPTION.—Except as expressly provided by the State Constitution or general law, the Legislature hereby declares that it is occupying the whole field of regulation of firearms and ammunition, including the purchase, sale, transfer, taxation, manufacture, ownership, possession, storage, and transportation thereof, to the exclusion of all existing and future county, city, town, or municipal ordinances or any administrative regulations or rules

adopted by local or state government relating thereto. Any such existing ordinances, rules, or regulations are hereby declared null and void.

26. In 2011, the statute was amended to its current version following pressure from the National Rifle Association to discourage firearms regulation in Florida. The statute now contains severe penalties for any violation of the Preemption Provision. *See* § 790.33(3), Fla. Stat. (2018).

27. Section 790.33(3)(f) in particular provides that "[a] person or an organization whose membership is adversely affected by any ordinance, regulation, measure, directive, rule, enactment, order, or policy promulgated or caused to be enforced in violation of this section may file suit against any county, agency, municipality, district, or other entity in any court of this state having jurisdiction over any defendant to the suit for declaratory and injunctive relief and for actual damages, as limited herein, caused by the violation." It further provides that "[a] court shall award the prevailing plaintiff in any such suit: 1. Reasonable attorney's fees and costs in accordance with the laws of this state, including a contingency fee multiplier, as authorized by law; and 2. The actual damages incurred, but not more than $100,000." In addition, pursuant to section 790.33(3)(b), "[i]t is no defense that in enacting the ordinance, regulation, or rule the local government was acting in good faith or upon advice of counsel."

## COUNT I
## DECLARATORY JUDGMENT

28. The City realleges and incorporates by reference the allegations contained in Paragraphs 1 through 27, as if fully set forth herein.

29. This count is an action for declaratory judgment, seeking a declaration from the Court that section 790.33(1), Florida Statutes, does not preempt the City from declining to enter into a license agreement with FL Gun Shows to host gun and knife shows at the WMA because, *inter alia*, (a) the decision not to enter into a license agreement for gun and knife shows is not a

12

"regulation of firearms or ammunition"; (b) FL Gun Shows does not engage in the "purchase, sale, transfer, taxation, manufacture, ownership, possession, storage, and transportation" of firearms or ammunition; (c) the decision not to enter into a license agreement for gun and knife shows is not a "municipal ordinance," "administrative regulation" or "rule adopted by local" government; (d) the decision not to enter into a license agreement for gun and knife shows at a publicly owned facility is an act taken in the City's propriety capacity; (e) section 790.33(1) does not include the prohibition or regulation of "gun shows" within the list of preempted actions; and (f) many (if not most) of the activities that take place at FL Gun Shows' gun and knife shows (such as knife sales, gun and knife accessory sales, T-Shirt sales, beef jerky sales, etc.) are not related to "firearms and ammunition."

30. In the alternative, to the extent that a decision to license or not license the WMA for gun and knife shows falls within the scope of the Preemption Provision, this count also seeks a declaratory judgment from the Court that Mr. Feldman's decision does not violate the Preemption Provision because, pursuant to the City's zoning code, gun and knife shows are a prohibited use at the WMA in accordance with section 790.33(4)(a), Florida Statutes.

31. There is a bona fide, actual, and present need for a declaration that section 790.33(1), Florida Statutes, does not apply to the conduct at issue, or that the conduct at issue does not violate section 790.33(1).

32. The declaration sought deals with a present controversy as to an ascertainable set of facts.

33. Constitutionally provided rights and privileges of the City are dependent upon the law applicable to the facts.

13

34. The parties have an actual, present, adverse, and antagonistic interest in the subject matter of this Counterclaim.

35. The antagonistic and adverse interests are all before this Court.

36. The relief sought is not merely the giving of legal advice or providing the answer to a question propounded from curiosity, but stems from an actual controversy.

**Prayer for Relief**

WHEREFORE, the City respectfully requests that judgment be entered in its favor:

   a. Declaring that section 790.33(1), Florida Statutes, does not apply to, or is not violated by, licensing decisions concerning the use of the WMA; and

   b. Granting such other relief as this Court deems just and proper.

**COUNT II**
**DECLARATORY JUDGMENT**

37. The City realleges and incorporates by reference the allegations contained in Paragraphs 1 through 27, as if fully set forth herein.

38. This count is pleaded in the alternative to Count I.

39. To the extent that a decision to license or not license the WMA for gun and knife shows falls within the scope of the Preemption Provision, and to the extent that Mr. Feldman's specific decision is found to have violated the Preemption Provision, this count is an action for declaratory judgment, seeking a declaration from the Court that the application of the Preemption Provision to the decision not to issue a license for gun and knife shows by a municipality on municipal-owned property is invalid because it arbitrarily and capriciously treats municipal-owned property differently than privately-owned property, with no rational or reasonable basis to distinguish between the two.

40. Under federal and Florida law, all statutes must, at a minimum, have a rational basis and must not be arbitrary and capricious. This requirement is rooted in doctrines of equal protection and due process, as well as article III, section 11(b) of the Florida Constitution.

41. Under Florida law, private property owners are permitted to pass and enforce regulations concerning the possession or display of firearms and ammunition on their property. However, FL Gun Shows contends that pursuant to section 790.33(1), Florida Statutes, local government property owners may not pass or enforce any regulations concerning firearms or ammunition, even on its property in its own proprietary capacity.

42. The City has the same (or a greater) interest as private property owners in keeping its government-owned premises, employees, and invitees safe.

43. The City has the same (or a greater) interest as private property owners in keeping its government-owned premises welcoming to the public.

44. Section 790.33(1), taken together with other Florida Statutes, creates a classification scheme treating local government property owners differently than private property owners with no reasonable relationship to the purpose of the law.

45. As such, the Court should declare the application of the Preemption Provision to the decision not to issue a license for of gun and knife shows by a municipality on municipally-owned property invalid and unconstitutional.

46. There is a bona fide, actual, and present need for a declaration that the application of the Preemption Provision to the decision not to issue a license for of gun and knife shows by the City on municipally-owned property is invalid and unconstitutional.

47. The declaration sought deals with a present controversy as to an ascertainable set of facts.

WEISS SEROTA HELFMAN COLE & BIERMAN, P.L.

48. Constitutionally provided rights and privileges of the City are dependent upon the law applicable to the facts.

49. The parties have an actual, present, adverse, and antagonistic interest in the subject matter of this claim.

50. The antagonistic and adverse interests are all before this Court.

51. The relief sought is not merely the giving of legal advice or providing the answer to a question propounded from curiosity, but stems from an actual controversy.

### Prayer for Relief

WHEREFORE, the City respectfully requests that judgment be entered in its favor:

a. Declaring that the application of the Preemption Provision to the regulation of gun and knife shows by a municipality on municipally-owned property violates the United States Constitution and the Florida Constitution; and

b. Granting such other relief as this Court deems just and proper.

*Respectfully submitted,*

WEISS SEROTA HELFMAN
COLE & BIERMAN, P.L.
*Counsel for Defendant/Counter-Plaintiff*
*City of Fort Lauderdale*
200 East Broward Blvd., Suite 1900
Fort Lauderdale, Florida 33301
Telephone: (954) 763-4242
Facsimile: (954) 764-7770

By:   */s/ Jamie A. Cole*
JAMIE A. COLE
Florida Bar No. 767573
Primary email: jcole@wsh-law.com
Secondary email: msarraff@wsh-law.com
MATTHEW H. MANDEL
Florida Bar No. 147303

16

>Primary email: mmandel@wsh-law.com
>Secondary email: lbrewley@wsh-law.com
>ADAM M. HAPNER
>Florida Bar No. 112006
>Primary email: ahapner@wsh-law.com
>Secondary email: mboschini@wsh-law.com

Dated: November 13, 2018

## **CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on November 13, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served on this day on all counsel of record identified on the Service List below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

>*/s/ Jamie A. Cole*
>JAMIE A. COLE

WEISS SEROTA HELFMAN COLE & BIERMAN, P.L.

## SERVICE LIST

| | |
|---|---|
| Michael P. Woodbury, Esq.<br>Robert P. Santiago, Esq.<br>WOODBURY, SANTIAGO<br>& CORREOSO, P.A.<br>9100 South Dadeland Blvd., Suite 1702<br>Miami, FL 33156<br>michael.woodbury@woodbury-santiago.com<br>robert.santiago@woodbury-santiago.com<br>Telephone: (305) 670-9580<br>Facsimile: (305) 670-2170<br>*Attorneys for Plaintiff/Counter-Defendant*<br>*Florida Gun Shows, Inc.* | Jamie A. Cole, Esq.<br>Matthew H. Mandel, Esq.<br>Adam M. Hapner, Esq.<br>WEISS SEROTA HELFMAN<br>COLE & BIERMAN, P.L.<br>200 East Broward Blvd., Suite 1900<br>Fort Lauderdale, FL 33301<br>jcole@wsh-law.com<br>mmandel@wsh-law.com<br>ahapner@wsh-law.com<br>Telephone: (954) 763-4242<br>Facsimile: (954) 764-7770<br>*Attorneys for Defendant/Counter-Plaintiff*<br>*City of Fort Lauderdale* |